UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| MELALEUCA, INC., an Idaho Corporation,<br><br>                              Plaintiff,<br>v.<br><br>LUCRAZON GLOBAL, INC., a Delaware corporation; and OSCAR GARCIA, ARMANDO TORRES-PERREZ, and DOES 1-25, Individuals,<br><br>                              Defendants. | Case No. 4:14-cv-00024-ELJ-CWD<br><br>**REPORT AND RECOMMENDATION RE: MOTION TO SET ASIDE DEFAULT (DKT. 112) and MOTION FOR ENTRY OF DEFAULT JUDGMENT (DKT. 113)**<br><br>**AND**<br><br>**ORDER RE: MOTION TO COMPEL DISCOVERY (DKT. 92)** |

Before the Court are three motions fully briefed and ripe for the Court's consideration: (1) Defendant Oscar Garcia's Motion to Set Aside Entry of Default (Dkt. 112); (2) Melaleuca's Motion for Entry of Default Judgment (Dkt. 113); and (3) Melaleuca's Motion to Compel. (Dkt. 92.) The Court conducted a telephonic hearing on November 3, 2015, and thereafter took the motions under advisement. Having fully reviewed the record and considered the parties' arguments and applicable legal authority, the Court will make the following recommendation to grant Garcia's motion to set aside

**REPORT, RECOMMENDATION, AND ORDER - 1**

default and to deny Melaleuca's motion for entry of default judgment as moot, and will issue also an order denying Melaleuca's motion to compel.

## **REPORT**

### **BACKGROUND**

Melaleuca, Inc., filed its First Amended Complaint against Defendants Lucrazon Global, Inc., Oscar Garcia, and Armando Torres-Perez on April 10, 2014.[1] (Dkt. 39.) According to the amended complaint, Garcia signed an Independent Marketing Executive Agreement with Melaleuca in February of 2012. Pursuant to the agreement, Garcia agreed to abide by Melaleuca's Statement of Policies, which included a policy prohibiting the solicitation of Melaleuca independent marketing executives to work for another company. Melaleuca contends Garcia violated the agreement by recruiting Melaleuca marketing executives to join Lucrazon—a separate company with which Garcia became associated as early as November of 2013.

Melaleuca seeks damages in this action for breach of contract, tortious interference with contractual relations, tortious interference with economic advantage, unfair competition, misappropriation of trade secrets, and civil conspiracy.[2] Relevant to the disputed issues before the Court, as discussed below, are the procedural history concerning discovery and the withdrawal of Garcia's local Idaho and *pro hac* counsel.

---

[1] Melaleuca filed its original Complaint (Dkt. 1) on January 17, 2014. Melaleuca amended its complaint for the purpose of adding Defendant Torres-Perez; no new allegations were made against Garcia. Melaleuca voluntarily dismissed its claims against Torres-Perez on October 8, 2014 . (Dkt. 63.)

[2] Prior to the discovery dispute, Melaleuca filed a motion for temporary restraining order against Garcia to restrain Garcia from allegedly attempting to raid Melaleuca's marketing executives. (Dkt. 6.) Visiting Judge, the Honorable William Shubb, presided over the TRO hearing, and denied Melaleuca's motion. (Dkt. 28.)

**REPORT, RECOMMENDATION, AND ORDER - 2**

On July 2, 2014, Melaleuca served Garcia with its first set of discovery requests.[3] Although Garcia timely responded to these requests, he insisted a protective order be in place prior to producing substantive answers and responsive documents. The Court ordered the parties to meet and confer to a stipulated protective order on August 7, 2014; the parties' stipulated protective order was approved on September 5, 2014. (Dkt. 58.) On that same day, Melaleuca emailed Garcia's counsel and requested Garcia produce all documents responsive to Melaleuca's first set of discovery requests.[4] Melaleuca sent two follow up reminders to Garcia's counsel on September 12, 2014, and September 25, 2014. In its latest reminder email, Melaleuca explained its plan to file a motion to compel if Garcia continued to refuse to supplement his answer or if Garcia's counsel refused to meet and confer.

Counsel for Garcia and Melaleuca met and conferred regarding the outstanding discovery on October 7, 2014.[5] Pursuant to the meet and confer, counsel agreed Garcia would produce supplemental interrogatory answers and responsive documents by October 17, 2014; Garcia did not provide Melaleuca with supplemental responses until November 7, 2014. Melaleuca was not satisfied with Garcia's supplemental responses, and on December 19, 2014, sent Garcia's counsel an email outlining the deficiencies in his discovery responses and requesting Garcia cure the deficiencies by January 5, 2015.

---

[3] According to Melaleuca, prior to serving its formal discovery requests, Melaleuca sent Garcia a draft set of discovery requests on April 16, 2014.

[4] Melaleuca did not include an exact deadline for Garcia to supplement his response to Melaleuca's first set of discovery requests; however, the email indicated responses were expected prior to September 30, 2014—the deadline for Melaleuca to file its response to Lucrazon's Motion to Dismiss.

[5] At the meet and confer, Melaleuca learned that Garcia was no longer affiliated with Lucrazon. *See Ltr. Memorializing Meet and Confer,* Aff. McClare, Ex. I. (Dkt. 94-9 at 3) ("you also said that Mr. Garcia is no longer affiliated with Lucrazon.").

**REPORT, RECOMMENDATION, AND ORDER - 3**

Garcia responded to the request to cure, but asserted he was unable to locate additional responsive documents—his response did not include any supplemental answers or documents. On January 20, 2015, still dissatisfied with Garcia's unwillingness to supplement his responses for discovery, Melaleuca requested another meet and confer with Garcia's counsel to discuss the discovery issues. Because Garcia's counsel did not respond to its first request, Melaleuca sent a follow up request to meet and confer on January 30, 2015. In the follow up request, Melaleuca explained it would file a motion to compel if Garcia's counsel continued to ignore its request.

On February 9, 2015, counsel for Garcia and Melaleuca met and conferred once more. At that time, Garcia's counsel agreed to check and confirm with Garcia that Garcia exhausted all sources reasonably accessible to him in searching for documents responsive to Melaleuca's first set of discovery requests. In addition, the parties agreed that, if Garcia discovered any new documents or responses upon his additional search, he would supplement his responses once more, by March 2, 2015. Garcia did not produce any additional documents or information. [6] On March 27, 2015, Melaleuca filed its Motion to Compel Discovery. (Dkt. 92.) Garcia timely filed his response in opposition on April 20, 2015. Although Melaleuca's motion to compel was fully briefed and ripe for the Court's

---

[6] As Melaleuca and Garcia continued to discuss their outstanding discovery issues, Lucrazon's counsel withdrew (Dkt. 83), the Clerk entered default (Dkt. 85), and default judgment was entered on March 23, 2015. (Dkt. 90.)  In Melaleuca's motion for default judgment, Melaleuca requested the Court enter a judgment for Lucrazon to produce documents pursuant to outstanding discovery requests: many of the documents Melaleuca requested from Lucrazon are the same documents Melaleuca seeks to obtain from Garcia. (Dkt. 86.) The Court declined to include Melaleuca's request for documents in its Order of Default Judgment against Lucrazon. (Dkt. 87, 90.) Specifically, the Court's order denying the production request states: "[t]he Federal Rules of Civil Procedure provide an avenue for Melaleuca to obtain relief regarding the production of documents….[A] conditional default judgment is not the proper mechanism to compel discovery." (Dkt. 87.)

REPORT, RECOMMENDATION, AND ORDER - 4

review by May 7, 2015, proceedings in this action were stayed for some time after Garcia's counsel withdrew.

It appears that, during the discovery process, Garcia had conflicts with his two attorneys concerning attorney's fees. Garcia, a resident of California, hired two attorneys to assist him with this lawsuit—Idaho counsel and *pro hac* counsel. On April 29, 2015, Garcia's Idaho counsel, Brook Bond, filed a motion to withdraw as Garcia's attorney, citing an attorney's fee dispute as the reason for his withdrawal.[7] (Dkt. 100.) The Court granted the motion to withdraw and ordered Garcia to obtain replacement Idaho counsel by May 26, 2015. Garcia did not timely obtain new Idaho counsel pursuant to the Court's order. On June 19, 2015, on account of Garcia's inability to timely obtain local counsel, Melaleuca filed its Motion for Entry of Default of Garcia. (Dkt. 105.) The Clerk entered default on June 22, 2015.

On June 30, 2015, Garcia's *pro hac* counsel, Stan Johnson, filed his motion to withdraw. (Dkt. 108.) In addition to citing an attorney's fee dispute as the reason for his withdrawal,[8] Johnson also stated: "Mr. Garcia's complete lack of willingness to assist and aid Mr. Johnson in his own defense has created an irresponsible conflict which prohibits Mr. Johnson from continuing to represent Mr. Garcia in this matter." Dec. Johnson, ¶ 4. (Dkt. 108-1 at 3.) The Court granted Johnson's motion to withdraw, and ordered Garcia to notify the Court with a written notice regarding how and by whom he would be represented, or if he planned to represent himself, by July 27, 2015.

---

[7] According to Bond, Garcia had not paid his fees since July 29, 2014. Dec. Bond, ¶ 2. (Dkt. 100-1 at 2.)
[8] Johnson contended Garcia failed to pay his fees since late 2014. Dec. Johnson, ¶3. (Dkt. 108-1 at 3.)

**REPORT, RECOMMENDATION, AND ORDER - 5**

Garcia obtained replacement Idaho counsel who appeared August 27, 2015.[9] The same day, Garcia filed a Motion to Set Aside Entry of Default. (Dkt. 112.) Melaleuca filed its Motion for Entry of Default Judgment on September 2, 2015.  (Dkt. 113.)

The Court first will address the Motion to Set Aside Default and Motion for Entry of Default Judgment, and next will address the Motion to Compel.

## MOTION TO SET ASIDE ENTRY OF DEFAULT (DKT. 112)

### 1.    Legal Standard

"The court may set aside an entry of default for good cause...." Fed.R.Civ.P. 55(c). The "good cause" standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b). *See TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 696 (9th Cir.2001). The good cause analysis requires the Court to consider three factors:

> (1) whether Garcia engaged in culpable conduct that led to the default;

> (2) whether Garcia has no meritorious defenses; or

> (3) whether Melaleuca would be prejudiced if default is set aside.

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle,* 615 F.3d 1085, 1091 (9th Cir.2010) (citing *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.,* 375 F.3d 922, 925–26 (9th Cir.2004)). As these factors are disjunctive, the Court may deny the motion if any of the three factors are true. *Am. Ass'n of Naturopathic Physicians v. Hayhurst,* 227 F.3d 1104, 1108 (9th Cir.2000).

---

[9] Garcia's new Idaho counsel represented to the Court Garcia obtained also potential new *pro hac* counsel, who is waiting for the Court's resolution of the motion to set aside default.

The party seeking relief from the entry of default bears the burden of showing that these factors favor such relief. *See Franchise,* 375 F.3d at 926. In considering these good cause factors, the United States Court of Appeals for the Ninth Circuit instructs that the Court is to be guided by the underlying policy concern that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir.1984).

## 2.    Analysis

### A. Culpable Conduct

Garcia contends his failure to timely obtain replacement counsel was unintentional and was not done in bad faith, because he promptly took steps to retain replacement counsel. Specifically, Garcia explains his untimeliness is due in part to the difficulty in locating an attorney while residing outside the Idaho forum and, also, due to the attorney's fee disputes between Garcia and his previous attorneys, which led to their respective withdrawals. These circumstances, Garcia argues, made it difficult to promptly retain replacement counsel despite his diligent search to do so. Additionally, Garcia argues, in the interim, he attempted to electronically file a document informing the Court of his self-representation; however, the submission was unsuccessful.

Melaleuca counters that Garcia's delay in obtaining counsel is indicative of culpability. Specifically, Melaleuca argues Garcia's receipt of the Court's orders to obtain replacement counsel, and his failure to timely act, qualifies as intentional conduct, which on its own is enough to establish Garcia's culpability. Alternatively, Melaleuca argues that Garcia's lack of participation in this lawsuit as a whole, specifically Garcia's

refusal to cure deficient responses to Melaleuca's discovery requests, constitutes culpability.

The Court recognizes two lines of cases in the Ninth Circuit outlining the standard for evaluating the "culpable conduct" factor when deciding whether to set aside default. *Garner v. Wells Fargo Home Mortgage, Inc.*, 2011 WL 2413841, at *2-3 (D. Idaho June 9, 2011). First is the *TCI Group* standard, which instructs: "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Garner*, at 2* (quoting *TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 697 (9th Cir.2001)). "The Court explained that TCI Group indicates that '[n]eglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process' is not intentional and should not necessarily be considered culpable conduct." *Lakeview Cheese Co., LLC v. Nelson-Ricks Creamery Co.*, 296 F.R.D. 649, 653 (D. Idaho 2013) (quoting *Garner*, at 2*). "Rather, a defendant's conduct should not be deemed culpable when 'there is no explanation of the default inconsistent with a devious, deliberate, willful or bad faith failure to respond.'" *Id.* (quoting *Garner*, at 2*)

The *Garner* Court itself explained the second line of cases follows the Ninth Circuit's holding in *Franchise Holding II, LLC, v. Huntington Rests. Inc. Group, Inc.,* 375 F.3d 922, 922 (9th Cir. 2004), which suggests that, "if a defendant has received actual or constructive notice of an action and fails to answer, this conduct alone is indicative of culpability." *Garner*, at 2*. But, in *United States v. Signed Pers. Check No.*

*730 of Yubran S. Mesle,* 615 F.3d 1085, 1091 (9th Cir.2010), the Ninth Circuit limited its holding in *Franchise*, and clarified that the "standard for culpability is inappropriate where the defaulting party is not represented by counsel or is otherwise not legally sophisticated." *Garner* at 2* (citing *Mesle*, 615 F.3d at 1093). In other words, with a sophisticated party, "an understanding of the consequences of its actions may be assumed, and with it, intentionality." *Garner*, at 2* (quoting *Mesle*, 615 F.3d at 1093).

The Court in *Mesle* further explained "the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" Mesle, 615 F.3d at 1092. A defendant's conduct is culpable for the purpose the good cause factors when there is "no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* "Simple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such a prejudice, weigh heavily in favor of denial of the motion to set aside a default." *Mesle*, 615 F.3d at 1092 (citing *TCI Group*, 244 F.3d at 696-97).

Melaleuca relies on the holding in *Franchise* for its contention that, because Garcia received notice of the Court's orders to obtain replacement counsel, his failure to timely comply with those orders, standing alone, constitutes culpable conduct. 375 F.3d at 926. Though Melaleuca does not specifically contend Garcia is a sophisticated party, it requests the Court make that assumption on the basis that Garcia still was represented by

*pro hac* counsel when he received the Court's first order requiring him to identify replacement Idaho counsel and also when the Clerk first entered default against him. In addition, Melaleuca contends the Court's orders to obtain replacement counsel were not complex, and that Garcia could understand them and the consequences of not abiding by them.

The Court declines to recommend a finding that Garcia is a legally sophisticated party and declines to apply the standard in *Franchise*. Though Garcia was represented when he received the Court's first order to obtain replacement counsel and when he received notice of the entry of default, he was represented by counsel appearing *pro hac vice*, who was prohibited from filing anything without local Idaho counsel. In fact, Melaleuca concedes that, during the period following the withdrawal of his Idaho counsel, Garcia was not represented. [10]

Further, in light of the attorney's fee dispute between Garcia and Johnson, Garcia's *pro hac* counsel, and the comment made by Johnson that Garcia displayed a "complete lack of willingness to assist and aid Mr. Johnson in his own defense," the Court cannot conclude that Johnson was actively defending Garcia and looking out for Garcia's best interest during this time. Accordingly, the fact Garcia failed to timely obtain replacement counsel pursuant to the Court's orders, is not, on its own, indicative of culpable conduct.

---

[10] *See* Mot. Entry of Default, ¶ 2. (Dkt. 105 at 2) ("The Court noted that Mr. Garcia's lead counsel, the Nevada law firm Cohen-Johnson, LLC, is not eligible to practice in Idaho. Therefore, lead counsel cannot continue to appear *pro hac vice* without Mr. Garcia appointing new counsel.").

REPORT, RECOMMENDATION, AND ORDER - 10

According to Garcia, his attempt to find replacement counsel by the Court's deadline was not without diligence. However, it was difficult for him to find counsel willing to take his case due to the attorney's fees disputes with his previous attorneys. In addition, Garcia argues it was even more difficult to obtain new Idaho counsel because he does not reside within the forum. And, though his attempt failed, Garcia contends he tried to inform the Court of his intention to represent himself.

Garcia's explanation is not consistent with a devious or deliberate bad faith failure to respond, but is indicative of inadvertence or neglect. Replacement counsel appeared for Garcia on August 27, 2015. The very same day, through counsel, Garcia sought to set aside default. Given the more lenient standard applied to Rule 55(c) motions in which default judgment has not been entered, the Court does not believe Garcia's conduct with respect to his failure to more timely retain replacement counsel should be considered culpable.

In addition, the Court declines to find Garcia's past conduct with respect to the parties' ongoing discovery dispute as evidence of culpability for purposes of setting aside default, as Melaleuca argues it should. The motion to compel was fully briefed before the Clerk entered default based on Garcia's failure to obtain replacement counsel or to appear *pro se*. As the Court concluded in its Order of Default Judgment against Lucrazon (Dkt. 87), and as more fully explained below, discovery rules in the rules of civil procedure provide ample means by which the Court can address and resolve discovery issues. The Court finds it is not appropriate to resolve those issues in the motion to set aside default.

**REPORT, RECOMMENDATION, AND ORDER - 11**

Therefore, this factor supports setting aside the Clerk's entry of default.

**B. Meritorious Defenses**

A party "seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle,* 615 F.3d 1085, 1094 (9th Cir.2010) (quoting *TCI Group Life Ins. Plan v. Knoebber,* 244 F.3d 691, 700 (9th Cir.2001). Rather, the defendant satisfies the meritorious defense requirement if it alleges sufficient facts that, if true, would constitute a defense. *Id.* Whether those allegations are true is not determined by the Court upon the motion to set aside the entry of default, but would be the subject of later litigation.

Garcia raises several defenses which satisfy the meritorious defense requirement. First, he indicates he intends to rely upon his good faith belief that he never worked for Melaleuca as a marketing executive, and that he did not knowingly execute any contract that could give rise to a non-competition claim nor engage in any conduct that could be considered a violation of a non-competition provision. He further argues the two businesses in question—Melaleuca and Lucrazon—are not actually competitors and that Melaleuca cannot prove the existence of any protectable trade secrets or proprietary information which Garcia took from Melaleuca to Lucrazon. And last, Garcia argues alternatively, Melaleuca has not suffered any cognizable damage by virtue of Garcia's

actions.[11] Melaleuca considers Garcia's arguments to be without merit and argues Garcia will be unable to prove his defenses because Garcia signed a Melaleuca independent marketing executive agreement, claiming Garcia is bound to the terms and conditions of that agreement, including its non-solicitation provision.

Although Garcia apparently signed a marketing executive agreement with Melaleuca, a signature on its own does not prove the existence of an enforceable contract. Nonetheless, even if Melaleuca establishes the agreement is enforceable, Garcia correctly points out that Melaleuca must still prove damages related to the alleged breaches of the agreement—an essential element of its claims against Garcia. It is not for the Court to decide these issues now, however.[12] Suffice it to say that these facts as alleged by Garcia, if true, would constitute a meritorious defense. Accordingly, this factor supports setting aside the Clerk's entry of default.

## C. Prejudice to Plaintiff

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case" or "being forced to litigate on the merits." *TCI Group,* 244 F.3d at 701; *Mesle,* 615 F.3d at 1094. Rather, "[t]he standard is whether [the plaintiff's] ability to pursue his claim will be hindered." *Falk,* 739 F.2d at 463.

---

[11] Garcia raised these same defenses in opposition to Melaleuca's motion for temporary restraining order against Garcia. Melaleuca argues we should not consider the order denying the TRO because the visiting judge who presided over the TRO hearing did not fully consider the issues. *See Transcript for Mot. for TRO*. (Dkt. 123.) Regardless, the Court here need not place great weight on the order denying the TRO (Dkt. 28) when deciding whether Garcia's defenses are meritorious.

[12] The parties argue extensively about the facts and merits of Garcia's defenses. However, in the context of this motion, the Court does not determine whether Garcia's defenses will be proven as true.

REPORT, RECOMMENDATION, AND ORDER - 13

Melaleuca asserts it would suffer prejudice if this matter continues to trial, because critical documents, which would support a favorable verdict for Melaleuca, have been lost by Garcia or are no longer available by virtue of Lucrazon's default. The documents Melaleuca references apparently are included in the motion to compel which was briefed in full prior to the Clerk's entry of default of Garcia. Therefore, despite Melaleuca's ongoing attempt to merge the issues raised in the motion to compel with the prejudice factor, the Court declines to do so.

The delay to Melaleuca pertinent to assessing the prejudice factor is Garcia's failure to more timely obtain replacement counsel. The Court first ordered Garcia to obtain replacement Idaho counsel by May 26, 2015, and then ordered Garcia to obtain replacement *pro hac* counsel by July 27, 2015. Garcia retained replacement Idaho counsel by August 27—three months after the first deadline, and one month after the second. The discovery deadline for this matter is March 31, 2016, and trial is set to begin on January 24, 2017. Taking into consideration that several months remain for the parties to proceed with litigation and for the Court to address ongoing discovery issues, if and as necessary, the Court finds setting aside default would result in much less harm than caused by the three month delay resulting from Garcia's attempts to obtain new counsel. Accordingly, this factor supports setting aside the Clerk's entry of default.

### D. Setting Aside Default is Warranted

Based on the above analysis, the Court concludes that none of the "good cause" factors justifies denial of Garcia's request to set aside the entry of default. As noted above, the Ninth Circuit has emphasized that "judgment by default is a drastic step

**REPORT, RECOMMENDATION, AND ORDER - 14**

appropriate only in extreme circumstances" and has instructed district courts not to ignore its "off stated commitment to deciding cases on the merits whenever possible." *Mesle*, 615 F.3d at 1901. Considering this instruction and the more liberal standard applied to Rule 55(c) motions, the Court will recommend Garcia's motion to set aside the Clerk's entry of default be granted.

## MOTION FOR ENTRY OF DEFAULT JUDGMENT (Dkt 113.)

In light of the Court's recommendation regarding Garcia's motion to set aside default, the Court will recommend Melaleuca's Motion for Default Judgment be denied as moot.

## MOTION TO COMPEL (DKT. 92)

On March 27, 2015, Melaleuca field its Motion to Compel. (Dkt. 92.) Specifically, Melaleuca requests the Court enter an order compelling Garcia to: (1) identify all reasonably available sources of documents responsive to Melaleuca's First Set of Discovery Requests and file with the Court an affidavit identifying all such sources; (2) produce non-privileged documents responsive to Melaleuca's First Set of Discovery Requests; and (3) pay Melaleuca's reasonable costs and attorney's fees incurred in bringing its motion to compel.

In support of its motion, Melaleuca argues Garcia consistently failed to provide responsive documents to its discovery requests. Melaleuca asserts Garcia failed to identify and search sources of responsive documents and broke his agreement to supplement his responses and document production by March 2, 2015. Melaleuca asserts also, for the first time in its reply, that Garcia failed to preserve documents within his

possession, custody, or control before he disassociated from Lucrazon, and failed to produce those documents.[13] For reasons more fully explained below, the Court will deny the motion to compel without prejudice.

## 1. Legal Standard

Fed. R. Civ. P. 34(a) provides:

> "A party may serve on another party a request within the scope of Rule 26(b):
>
> > (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample…items in the responding party's possession, custody, or control….

The Ninth Circuit has defined "control" as "the legal right to obtain documents upon demand." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). "The party seeking production of the documents [here, Melaleuca] bears the burden of proving that the opposing party has such control." *Id.*

## 2. Analysis

### A. Garcia's alleged failure to identify reasonably accessible sources of responsive documents

Melaleuca argues Garcia failed to keep the commitments he made during the parties' latest meet and confer discussion (between Melaleuca and Garcia's former *pro hac* counsel). Melaleuca contends Garcia's attorney, Johnson, acknowledged that

---

[13] Melaleuca alleges also Garcia's former attorney breached his duty to ensure Garcia's collection of discovery was reasonably designed to result in the production of all responsive documents. Because Garcia's former attorney no longer represents Garcia in this matter, the Court declines to consider this allegation at this time.

Garcia's document production was sparse, and that entire categories of documents had not been produced; this led Melaleuca to question whether Garcia searched all reasonable sources of responsive documents. Melaleuca alleges the parties agreed that Johnson would meet with Garcia to identify reasonably accessible sources of documents and take steps to collect documents from those sources.[14] Melaleuca alleges also the parties agreed Garcia would supplement his responses and production by March 2, 2015. Garcia did not produce supplemental responses or documents. Despite agreeing to supplement his responses if anything was found, he now argues he produced all responsive documents within his possession and control and argues also he did not break a promise to supplement because he was not (and still is not) in possession of additional responsive information.[15]

Based on its review of the record, the Court cannot conclude that Garcia breached his duty to supplement his responses or broke his promise to identify reasonably accessible sources of documents. Pursuant to Melaleuca's letter to Johnson dated February 11, 2015, memorializing the meet and confer, Johnson agreed to meet with Garcia to determine whether he exhausted all sources reasonably accessible to Garcia in searching for documents responsive to Melaleuca's requests. *See* Aff. Krannich, Ex. P. (Dkt. 95-6.) In addition, Johnson agreed Garcia would provide any supplemental production and responses by March 2, 2015. *Id.* The letter does not state that Garcia

---

[14] Some of these discussions apparently were occurring around the time period Lucrazon defaulted and the Court entered default judgment. *See* Order of Default Judgment (Dkt. 90); *see also* Aff. Krannich, Ex. P, Q. (Dkt. 95-6, 95-7.)

[15] Johnson, the attorney who made these promises in the meet and confer still represented Garcia in his response to the motion to compel.

**REPORT, RECOMMENDATION, AND ORDER - 17**

agreed to send to Melaleuca a list of reasonably accessible documents. Likewise, the letter did not state that Garcia promised he would produce supplemental documents and responses; it only reiterated Melaleuca's request for supplemental responses and answers pursuant to the additional search, if anything additional was found. Garcia contends, through his search, he was unable to locate any more documents.

### B. Duty to preserve documents

Melaleuca contends Garcia, while still associated with Lucrazon, was in possession, custody, and control of several documents responsive to its discovery requests and failed to procure and preserve them. Specifically, Melaleuca contends, by virtue of Garcia's position as vice president of sales for Lucrazon, and Garcia's access to records of payments, emails, and contracts with individuals Garcia allegedly recruited to Lucrazon, that Garcia was in legal control of these documents. Melaleuca contends further that Garcia was under a duty to preserve these documents, and breached that duty when Garcia failed to take the responsive documents with him when he dissociated with Lucrazon.

The Court finds Melaleuca has failed to meet its burden in establishing that Garcia had legal control over the documents he may have had access to while associated with Lucrazon. Though Garcia was vice president of sales, the record reflects also that Garcia was associated with Lucrazon as an independent contractor.[16] The Court has no further information regarding Garcia's access to documents requested by Melaleuca and will not

---

[16] *See* Aff. McClare, Ex. J—*Def. Supp. Objections and Resps. To Pl.'s 1st Set of Interrogs.* (Dkt 94-10 at 13) ("[Mr. Garcia] had a verbal agreement independent contractor agreement with [Lucrazon]....").

assume he had control over the documents. Further, the Court is not in a position to determine, without assumptions based on the limited record, whether Garcia had a duty to preserve the documents requested.[17]  As the parties acknowledged during the hearing, Garcia has not been deposed on this issue or other matters pertinent to his discovery obligations.

Melaleuca first alleged Garcia failed to preserve documents in his possession, custody, and control in its reply to his response to the motion to compel. While Garcia admitted in his response that he "did not take any documents with him when he left his employment with Lucrazon," this statement on its own does not establish that Garcia had control over the documents and thus, had a duty to preserve the documents. Garcia should have an opportunity to respond to Melaleuca's allegations. Further, Garcia has new counsel,[18] who during the hearing, expressed willingness on his and Garcia's behalf to meet with Melaleuca to resolve the dispute regarding documents Garcia may be able to procure and produce, such as his personal bank deposit records.

While the Court will deny the motion to compel, it will also order the parties to meet and confer once more on this discovery dispute. There are several options, including sanctions, available to the Court if later, based on a more fully developed record, there becomes reason to conclude discovery abuses or spoliation of evidence has occurred.

---

[17] *See* Order denying Melaleuca's motion for default judgment without prejudice (Dkt. 87 at 2) (declining to consider Lucrazon's outstanding discovery with Melaleuca in its order for default judgment).
[18] During the hearing, the parties informed the Court the status of the discovery responses has not changed since Garcia obtained new counsel.

REPORT, RECOMMENDATION, AND ORDER - 19

### B. Attorney's Fees

Melaleuca requests reasonable attorney's fees and costs incurred in filing this motion pursuant to Fed. R. Civ. P 37 (a)(5)(A). Garcia, on the other hand, requests reasonable attorney's fees pursuant to Fed. R. Civ. P 37 (a)(5)(B). Pursuant to Rule 37(a)(5)(B), if the motion is denied:

> [T]he court….must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both, to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposition of the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

While the Court will deny Melaleuca's motion to compel, it does not find the motion without merit. Further, the Court finds Garcia's opposition was justified as the Court cannot compel him to produce documents no longer in his possession, custody, or control. Accordingly, the Court will deny both parties' requests for attorney's fees.

## CONCLUSION

Based upon the above, the Court concludes that Garcia satisfies the standard for setting aside the Clerk's entry of default, and, therefore, will recommend Garcia's Motion to Set Aside Entry of Default be granted and will recommend Melaleuca's Motion for Entry of Default Judgment be denied as moot. In addition, the Court will deny Melaleuca's Motion to Compel Discovery.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

    1)  Motion to Set Aside Default (Dkt. 112) be **GRANTED**; and

    2)  Motion for Entry of Default Judgment (Dkt. 113) be **DENIED** as moot.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

    1) Motion to Compel (Dkt. 92) is **DENIED** without prejudice;

    2) Motions for Attorney's Fees (Dkt. 92, 99) are **DENIED**; and

    3) The parties shall meet and confer by **December 18, 2015** to address the status of discovery and outstanding discovery issues.

A telephonic status conference is set for **January 7, 2016 at 2:00 p.m. MST** in Boise before Judge Candy W. Dale, for the purpose of discussing the status of discovery. Counsel for Plaintiff is directed to initiate the call and when all parties are on the line, connect to the courtroom at 208-334-9945.

Dated: **November 24, 2015**

Honorable Candy W. Dale
United States Magistrate Judge

**REPORT, RECOMMENDATION, AND ORDER - 21**